RETIREMENT VILLAGES, INC. v. N.C. DEPT. OF HUMAN RESOURCES

[124 N.C. App. 495 (1996)]

RETIREMENT VILLAGES, INC. AND LIBERTY HEALTHCARE LIMITED PARTNER-
SHIP, D/B/A COUNTRYSIDE VILLA OF DUPLIN, PETITIONERS v. NORTH CARO-
LINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF FACIL-
ITY SERVICES, CERTIFICATE OF NEED SECTION, RESPONDENT, AND
BEAVER PROPERTIES/WALLACE, INC. AND BRIAN CENTER HEALTH &
RETIREMENT/WALLACE, INC., RESPONDENTS-INTERVENORS

No. COA95-1209

(Filed 19 November 1996)

1. **Hospitals and Medical Facilities or Institutions § 12 (NCI4th)— certificate of need—funding by another entity**

   Nothing in the statutory criterion for financial and opera-
   tional projections precludes a certificate of need applicant from
   relying on the financial resources of another entity for its fund-
   ing. N.C.G.S. § 131E-183(a)(5).

   **Am Jur 2d, Hospitals and Asylums §§ 1-5.**

   **Validity and construction of statute requiring estab-
   lishment of "need" as precondition to operation of hospi-
   tal or other facilities for the care of sick people. 61 ALR3d
   278.**

2. **Hospitals and Medical Facilities or Institutions § 12 (NCI4th)— certificate of need—application—funding by another entity—commitment for funding**

   Applicants for a certificate of need are not required to submit
   financial information about themselves when the project is to be
   funded by another entity. However, in such a case the application
   must contain evidence of a commitment to provide the funds by
   the funding entity.

   **Am Jur 2d, Hospitals and Asylums §§ 1-5.**

3. **Hospitals and Medical Facilities or Institutions § 12 (NCI4th)— certificate of need—application—letters insuf-
   ficient to show funding commitment**

   A letter from a bank indicating its interest in lending a fund-
   ing entity money for a project to add nursing beds and confirm-
   ing that the second funding entity had in excess of $22,738 which
   could be used to fund the project, and a letter from the second
   funding entity's president stating that the entity would lend the
   applicant any funds necessary for working capital during the first

three years of operation, did not show a commitment by the funding entities to provide the necessary funds for the project as required by a statutory criterion. N.C.G.S. § 131E-183(a)(5).

**Am Jur 2d, Hospitals and Asylums §§ 1-5.**

4. **Hospital and Medical Facilities or Institutions § 12 (NCI4th)— certificate of need—application—patient origin—assumptions and methodology**

An application for a certificate of need for additional nursing home beds failed to comply with a statutory criterion and an agency rule where it contained no clear statement of the assumptions or methodology used by the applicant in projecting patient origin. N.C.G.S. § 131E-183(a)(3).

**Am Jur 2d, Hospitals and Asylums §§ 1-5.**

5. **Hospitals and Medical Facilities or Institutions § 12 (NCI4th)— certificate of need—application—type of service**

An applicant for a certificate of need for additional nursing home beds failed to define clearly the type of services it intended to provide as required by a statutory criterion where the application contained contradictory information as to whether the applicant proposed a dedicated Alzheimer's unit or only proposed Alzheimer's care within the general nursing home population. N.C.G.S. § 131E-183(a)(3).

**Am Jur 2d, Hospitals and Asylums §§ 1-5.**

Appeal by petitioners from final agency decision entered 30 June 1995 by John M. Syria, Director of the North Carolina Department of Human Resources Division of Facility Services. Heard in the Court of Appeals 22 August 1996.

*Bode, Call & Green, L.L.P., by Robert V. Bode and S. Todd Hemphill, for petitioners-appellants.*

*Attorney General Michael F. Easley, by Assistant Attorney General Lauren M. Clemmons, for respondent-appellee.*

*Poyner & Spruill, L.L.P., by Mary Beth Johnston and Benjamin P. Dean, for respondents-intervenors.*

LEWIS, Judge.

This appeal arises out of an award by the Department of Human Resources ("the Agency") of a certificate of need ("CON") to respondents Beaver Properties/Wallace, Inc. and Brian Center Health & Retirement/Wallace, Inc. (collectively "Beaver Properties") and the denial of a CON application by Retirement Villages, Inc. and Liberty Healthcare Limited Partnership, d/b/a Countryside Villa of Duplin (collectively "Countryside Villa").

The 1993 State Medical Facilities Plan identified a need for thirty nursing home beds in Duplin County. In response to this need, Countryside Villa submitted a CON application on 15 September 1993, seeking to expand the services at its existing Duplin County facility by adding thirty (30) beds. Simultaneously, Beaver Properties filed an application with the CON Section to convert twenty (20) Home for the Aged beds to nursing beds and to construct space for an additional ten (10) nursing beds. By letters dated 25 February 1994, the CON Section disapproved Countryside Villa's application and conditionally approved that of Beaver Properties.

On 24 March 1994, Countryside Villa filed a petition for a contested case hearing challenging the CON Section's decision. After an evidentiary hearing, the administrative law judge ("ALJ") issued a decision recommending that the Agency reverse the CON Section's decision as to the conditional approval of Beaver Properties' application and affirm its disapproval of Countryside Villa's application. The ALJ recommended that the beds at issue be available for a new review. The final agency decision, however, affirmed the entire decision of the CON Section. Countryside Villa appeals.

Countryside Villa asserts that the Agency made several errors in affirming the conditional approval of Beaver Properties' application because Beaver Properties did not satisfy several of the review criteria set out in N.C. Gen. Stat. section 131E-183. We find merit in at least two of these arguments and therefore reverse the Agency's decision as to Beaver Properties.

Our standard of review in reviewing an agency decision depends upon the nature of the alleged error. *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). If the petitioner contends that the agency's decision was based on an error of law, including an error in statutory interpretation, "de novo" review is

required in which the court may substitute its own judgment for that of the agency. *Friends of Hatteras Island v. Coastal Resources Comm.*, 117 N.C. App. 556, 567, 452 S.E.2d 337, 344 (1995). "If, however, it is alleged that the agency's decision was not supported by the evidence or that the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test." *In re Appeal of Ramseur*, 120 N.C. App. 521, 524, 463 S.E.2d 254, 256 (1995). Under this test, an agency's ruling should only be reversed if it is not supported by substantial evidence. *Mendenhall v. N.C. Dept. of Human Resources*, 119 N.C. App. 644, 650, 459 S.E.2d 820, 824 (1995). "Proper application of the whole record test takes into account the administrative agency's expertise." *Britthaven, Inc. v. N.C. Dept. of Human Resources*, 118 N.C. App. 379, 386, 455 S.E.2d 455, 461, *disc. review denied*, 341 N.C. 418, 461 S.E.2d 754 (1995).

· Countryside Villa contends that the Agency erred in ruling that Beaver Properties' application conformed to G.S. 131E-183(a)(5) ("criterion 5"), which provides:

(5) Financial and operational projections for the project shall demonstrate the availability of funds for capital and operating needs as well as the immediate and long-term financial feasibility of the proposal, based upon reasonable projections of the costs of and charges for providing health services by the person proposing the service.

N.C. Gen. Stat. § 131E-183(a)(5) (1994).

Countryside Villa maintains that since Beaver Properties only submitted financial information from Brian Center Management Corporation ("BCMC") and Brian Center Corporation ("BCC"), its application was "absolutely non-approvable." Countryside Villa contends that the application should have contained financial statements from the project's applicants because only the financial statements of the applicants themselves are sufficient to show the financial feasibility of the project.

[1] Essentially, Countryside Villa argues that the Agency's interpretation of criterion 5's requirements was error. Therefore, we apply de novo review; we find no error in the Agency's interpretation. Contrary to Countryside Villa's contentions, the above statutory criterion does not require the submission of financial statements by the applicants. It merely requires the Agency to determine the availability of funds for the project from the entity responsible for funding, which may or

may not be an applicant. The phrase "by the person proposing the service" describes the person who is to project the reasonable costs and charges. It does not, as Countryside Villa alleges, require the entity proposing the service to demonstrate its ability to finance the project itself. We find nothing in criterion 5 which precludes a CON applicant from relying on the financial resources of another entity for its funding.

[2] We reject Countryside Villa's assertion that a CON application may only be approved when the applicants themselves submit financial information. However, we agree that in cases where the project is to be funded other than by the applicants, the application must contain evidence of a commitment to provide the funds by the funding entity. We hold that without such a commitment, an applicant cannot adequately demonstrate availability of funds or the requisite financial feasibility.

[3] In the present case, the Agency made no finding that BCC and BCMC committed themselves to provide the necessary funding for Beaver Properties' proposed project; nor do the appellees assert that such documentation exists. Appellees instead focus on the fact that the applicants, BCC, and BCMC are interrelated corporations. However, this fact has little bearing on the issue of whether, for purposes of demonstrating financial feasibility and availability of funds, BCC and BCMC are committed to finance a project for which they are neither named applicants nor legally financially responsible.

Beaver Properties' application estimates that the capital costs to implement the proposed project would be $227,380. Beaver Properties anticipated that $204,642 would come from conventional loans and $22,738 from owner's equity. Although the application contains a letter from NationsBank indicating its interest in loaning BCMC $204,642 for the addition/conversion and confirming that BCC had in excess of $22,738 which could be used to fund the project, this does not constitute a commitment from BCMC that it will provide the financing; nor does it bind BCC to use its $22,738 for the project. The application also contains a letter from BCC's president stating that BCC would loan Beaver Properties any funds necessary for working capital during the first three years of operation. Although this letter may arguably show commitment to provide working capital during the first three years of operation, it does not commit BCC to expend any money for the capital expenses necessary to implement the project. Therefore, we hold that the Agency erred in finding that Beaver Properties satisfied criterion 5.

**[4]** Countryside Villa also contends that the Agency erred in finding Beaver Properties in conformity with G.S. 131E-183(a)(3) (criterion 3). This criterion requires:

> (3) The applicant shall identify the population to be served by the proposed project, and shall demonstrate the need that this population has for the services proposed, and the extent to which all residents of the area, and, in particular, low income persons, racial and ethnic minorities, women, handicapped persons, the elderly, and other underserved groups are likely to have access to the services proposed.

G.S. § 131E-183(3).

Countryside Villa's argument centers around Beaver Properties' answer to question 12 in Section III of the application, which asks for a projected percentage of patient origin. In response to this inquiry, Beaver Properties indicated that 80% of its new and existing patients would be from Duplin County. Countryside Villa maintains that, since there is no way to determine from the application how Beaver Properties arrived at this figure, its application should have been denied.

The Agency found Beaver Properties in conformity with criterion 3 because the question at issue did not require that any particular mathematical formula be used for this projection. The Agency also found that the project analyst at the CON section was aware that Beaver Properties utilized certain assumptions and that these assumptions and the specific methodology were "sufficiently clear" in the application.

While we agree that there is no specific methodology that must be used in determining patient origin, under CON regulations, patient origin must be projected and "[a]*ll assumptions, including the specific methodology by which patient origin is projected, must be clearly stated.*" N.C. Admin. Code tit. 10, r. 3R.1118 (March 1991) (emphasis added) ("rule .1118").

In its final decision, the Agency made the following relevant finding:

> 10. Among the assumptions *made and identified by* [Beaver Properties] was that [Beaver Properties] would serve all nursing facility patients, that [Beaver Properties] did not anticipate continuing to serve all of the same counties that it had been serving,

and that a turnover of patients in the existing beds would occur over time, thus causing changes in the percentage of county of origin of the patients.

(emphasis added).

However, there is no evidence in the record which supports a finding that Beaver Properties identified any assumptions. After thoroughly reviewing Beaver Properties' application, we observe no clear statement of the assumptions or methodology used by the applicant in projecting patient origin, even though the application does specify assumptions related to other topics. The CON analyst testified that Beaver Properties made certain "assumptions," which he then described. However, the assumptions referred to are not clearly set out in the application. Rather, they appear to be assumptions which the analyst has pieced together from various parts of the application. We hold that such "assuming" of an applicant's "assumptions" does not satisfy rule .1118, which requires the assumptions and methodology for computing patient origin to be "clearly stated." The above Agency finding is not based on substantial evidence in the record.

Additionally, it appears that the Agency employed the wrong standard in determining whether the assumptions and methodology were contained in the application. Instead of finding that they were "clearly stated," the Agency found that they were "sufficiently clear" and "discernable." For these reasons, we hold that the Agency erred in finding that Beaver Properties' application conformed with criterion 3 and rule .1118.

[5] Countryside Villa also maintains that the Agency erred in affirming the rejection of its application. We find no merit in this argument and affirm the Agency's decision as to Countryside Villa.

Countryside Villa argues that the Agency erred in rejecting its application under criterion 3 on the ground that it proposed a dedicated Alzheimer's Unit. Countryside Villa contends that the application contained no such proposal, but actually proposed Alzheimer's care within the general nursing home population.

Since Countryside Villa essentially argues that there is insufficient evidence to support the Agency's findings, we employ the whole record test, taking into account the Agency's expertise. *See Britthaven*, 118 N.C. App. at 386, 455 S.E.2d at 461. We hold that substantial evidence exists to support a finding that Countryside Villa failed to define clearly the type of services it intended to provide. The

application contains contradictory information regarding whether Countryside Villa proposed a dedicated Alzheimer's unit or not. Although the application states that the care will be provided to "residents at all levels of care, rather than in a distinct unit," it also refers to "the Alzheimer's Unit" and provides information on Alzheimer's special care units. Accordingly, the agency did not err in concluding that Countryside Villa failed to conform to criterion 3.

Since we have determined that Beaver Properties and Countryside Villa are each nonconforming to the statutory criteria on at least one ground, we see no need to reach the remainder of Countryside Villa's arguments.

In summary, we reverse that portion of the final agency decision which affirms the CON section's conditional approval of Beaver Properties' application. We affirm that portion of the final agency decision which affirms the CON section's disapproval of Countryside Villa's application. Accordingly, we remand this matter to the CON section for a new review to allocate the beds at issue.

Reversed in part, affirmed in part and remanded.

Judges JOHNSON and WYNN concur.