JOHNSTON HEALTH CARE CTR., LLC v. N.C. DEP'T OF HUMAN RES.

[136 N.C. App. 307 (2000)]

JOHNSTON HEALTH CARE CENTER, L.L.C., Petitioner-Appellant v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, Respondent-Appellee and LIBERTY HEALTHCARE SERVICES, L.L.C., Respondent-Intervenor-Appellee, HEALTHPRIME, INC., Respondent-Intervenor

No. COA99-129

(Filed 18 January 2000)

## 1. Hospitals and Other Medical Facilities— certificate of need—commitment of funds—sufficient application

Substantial evidence existed in the whole record to support the Department of Health and Human Services' findings that Liberty Services' application for a certificate of need for nursing facility beds provided evidence of funding source commitment which supported the conclusion that the application conformed with statutory criteria. The financial statements of the two principals of Liberty evidence an availability of funds.

## 2. Hospitals and Other Medical Facilities— certificate of need—amendment of prehearing statement

A Department of Health and Human Services' decision to reverse an administrative law judge's denial of Liberty Services' motion to amend its prehearing statement in a certificate of need preceding was not arbitrary or capricious where Liberty Services had not been required to file a prehearing statement, the statement which it filed addressed only its own application, and summary judgment motions from the competing applicant had not been filed at that time.

## 3. Hospitals and Other Medical Facilities— certificate of need—commitment of funds—insufficient application

There was substantial evidence in the record to support a Department of Health and Human Services' finding that Johnson Health Care's certificate of need application failed to comply with the statutory criteria of evidence of a funding source's ability and commitment to provide funds where Johnson's line of credit expired before the commencement of the proposed project, even though Johnson asserted in its brief that renewals in the bank's letter established a commitment.

Appeal by petitioner Johnston Health Care Center, L.L.C. from the final agency decision entered 24 July 1998 by the North Carolina

Department of Health and Human Services. Heard in the Court of Appeals 25 October 1999.

*Parker, Poe, Adams & Bernstein L.L.P., by Renee J. Montgomery, for the petitioner-appellant.*

*Michael F. Easley, Attorney General, by Staci Tolliver Meyer, Assistant Attorney General and Melissa L. Trippe, Assistant Attorney General, for the respondent-appellee.*

*Poyner & Spruill, L.L.P., by William R. Shenton, for the respondent-intervenor-appellee.*

WYNN, Judge.

Johnston Health Care Center, L.L.C. appeals from a final decision of the North Carolina Department of Health and Human Services awarding a Certificate of Need to Liberty Healthcare Services, L.L.C. and denying Johnston Center's Certificate of Need application. Our review of the whole record reveals substantial evidence to support the Department of Health and Human Services' award. We, therefore, affirm the award.

The 1997 State Medical Facilities Plan established a need for one hundred additional nursing facility beds for the year 2000 in Johnston County. In response, Johnston Center and Liberty Services filed Certificate of Need applications to develop and operate a one hundred bed nursing facility in Benson, North Carolina.

Upon considering the two applications, the Department of Health and Human Services[1] found that Johnston Center's application conformed with all applicable statutory and regulatory review criteria. Additionally, the Department of Health and Human Services found that Liberty Services' application conformed at least conditionally with all applicable statutory and regulatory review criteria, but imposed several conditions on its approval of Liberty Services' application. One of those imposing conditions provided that:

Liberty Healthcare Services, L.L.C. shall provide the Certificate of Need Section with the correspondence from an appropriate official who is fiscally responsible for the funds to be used for the development of the project documenting that $691,362.00 is available and committed for the capital needs and that $185,000.00 is

---

1. Formerly the Department of Human Resources. N.C. Gen. Stat. § 143B-138.1 (1998 Cum. Supp.).

JOHNSTON HEALTH CARE CTR., LLC v. N.C. DEP'T OF HUMAN RES.

[136 N.C. App. 307 (2000)]

available and committed for start-up and initial operating expenses.

This condition related to, *inter alia*, Liberty Services' compliance with the requisite financial feasibility under N.C. Gen. Stat. § 131E-183(a)(5)—"criterion 5."

The Department of Health and Human Services made a comparative analysis of the two applications in its findings and concluded that Liberty Services' application was superior to Johnston Center's application. The Department of Health and Human Services further found that upon Liberty Services' compliance with the imposed conditions, its application was the most effective alternative proposal in the review.

On 27 August 1997, Johnston Center petitioned for a contested case hearing with the Office of Administrative Hearings to contest the award of a Certificate of Need to Liberty Services. Thereafter, on 3 September 1997, the Administrative Law Judge ordered each party to file a prehearing statement.

By order dated 30 September 1997, the Administrative Law Judge allowed Liberty Services to intervene as a party "for all purposes" in the contested case. Although no additional pleadings were ordered by the Administrative Law Judge, Liberty Services filed an initial prehearing statement which indicated that:

> LIBERTY will present evidence to show that its application conformed or conformed as conditional, with each applicable review criterion, and that the [Certificate of Need] Section acted within its authority and jurisdiction, correctly, properly, reasonably, and lawfully in reviewing these applications and making its decision to approve LIBERTY.

On 13 February 1998, Johnston Center moved for summary judgment on the basis that because Liberty Services failed to provide sufficient documentation establishing a commitment of funds by the funding sources, its application did not as a matter of law conform with criterion 5. Following an evidentiary hearing, the Administrative Law Judge issued a recommended decision granting Johnston Center's motion and finding that Liberty Services' application did not contain any evidence of the commitment to provide the funds by the funding person as required by criterion 5.

Subsequently, Johnston Center moved for summary judgment in its favor on the grounds that there was no genuine issue of material fact regarding the Department of Health and Human Services' determination that Johnston Center's application conformed with applicable statutory and regulatory criteria.

Liberty Services responded by moving to amend its initial prehearing statement to include claims that the Department of Health and Human Services erred in finding that Johnston Center's application conformed with all statutory and regulatory criteria. And Liberty Services moved for summary judgment against Johnston Center on the grounds that Johnston Center's application failed to comply with criterion 5.

At the hearing on the motions, the Administrative Law Judge denied Liberty Services' motion to amend its prehearing statement on the basis that Liberty Services' motion was untimely and that the amendment would "substantially prejudice" Johnston Center. Thereafter, the Administrative Law Judge heard arguments, found that Johnston Center's application was consistent with all review criteria, granted Johnston Center's summary judgment motion, and recommended that the Department of Health and Human Services award a Certificate of Need to Johnston Center. Alternatively, the Administrative Law Judge issued a recommended decision contingent upon the reversal on appeal of his order denying Liberty Services' motion to amend. In the contingent recommended decision, the Administrative Law Judge recommended granting summary judgment in favor of Liberty Services based on Johnston Center's noncompliance with criterion 5.

The final agency decision reversed the Administrative Law Judge's denial of Liberty Services' motion to amend its prehearing statement and adopted the Administrative Law Judge's contingent recommended decision finding that Liberty Services' application was consistent with all plans, standards and criteria, and was comparatively superior to the other applicants.

This appeal followed.

## I. SCOPE OF JUDICIAL REVIEW

Before addressing the merits of Johnston Center's appeal, we must determine the appropriate standard of judicial review presented in the case *sub judice. See Brooks v. McWhirter Grading Co., Inc.,* 303 N.C. 573, 578, 281 S.E.2d 24, 28 (1981) (holding that in present-

ing appeals from an administrative decision to the judicial branch, it is essential for the parties to present their contentions as to the applicable scope of review, and further the reviewing court should make clear the review under which it proceeds).

The North Carolina Administrative Procedure Act, N.C. Gen. Stat. § 150B-1 et seq., governs both trial and appellate court review of administrative agency decisions. *See Eury v. North Carolina Employment Sec. Comm'n*, 115 N.C. App. 590, 446 S.E.2d 383 (1994). Under 150B-51(b),

> . . . the court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decision are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon lawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51 (1995). Although this statute "lists the grounds upon which the superior court may reverse or modify a final agency decision, the proper manner of review depends upon the particular issues presented on appeal." *Amanini v. North Carolina Dep't of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 118 (1994); *see also State ex rel. Utilities Comm'n v. Bird Oil Co.*, 302 N.C. 14, 21, 273 S.E.2d 232, 236 (1981) (stating that the "nature of the contended error dictates the applicable scope of review").

If the petitioner argues that the agency's decision was not supported by the evidence or that the decision was arbitrary or capricious, the reviewing court must apply the "whole record test". *See Retirement Villages, Inc. v. North Carolina Dep't of Human Resources*, 124 N.C. App. 495, 498, 477 S.E.2d 697, 699 (1996). In applying the whole record test, the reviewing court is required " 'to

examine all competent evidence (the whole record) in order to determine whether the agency decision is supported by substantial evidence.' " *In re Meads*, 349 N.C. 656, 663, 509 S.E.2d 165, 170 (1998) (quoting *Rector v. N.C. Sheriffs' Educ. & Training Standards Comm'n*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 616 (1991)). Thus, under the whole record test, "an agency's ruling should only be reversed if it is not supported by substantial evidence." *Retirement Villages, Inc.*, 124 N.C. App. at 498, 477 S.E.2d at 699. " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *In re Meads*, 349 N.C. at 663, 509 S.E.2d at 170 (quoting *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977)).

Further, the whole record test requires the reviewing court to consider both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached. *See id.* at 663, 509 S.E.2d at 170. But the test does not allow the reviewing court to replace the agency's judgment, " 'even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Id.* (quoting *Thomas v. Wake County Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

In the instant case, Johnston Center contends that several of the Department of Health and Human Services' findings were unsupported by the evidence in the record and were arbitrary or capricious. Therefore, we apply the whole record test in reviewing this matter.

## II. LIBERTY SERVICES' COMPLIANCE WITH CRITERION 5

[1] Johnston Center first contends that because Liberty Services failed to provide sufficient evidence that it had committed funds for the proposed project, the Department of Health and Human Services erred in finding that Liberty Services' application as submitted complied with all applicable criteria.

Under N.C. Gen. Stat. § 131E-183, the Department of Health and Human Services "shall review all applications utilizing the criteria outlined in [the statute] and shall determine that an application is either consistent with or not in conflict with these criteria before a certificate of need for the proposed project shall be issued." One such criteria is criterion 5 which provides that:

Financial and operational projections for the project shall demonstrate the availability of funds for capital and operating needs as well as the immediate and long-term financial feasibility

of the proposal, based upon reasonable projections of the costs of and charges for providing health services by the person proposing the service.

N.C. Gen. Stat. § 131E-183(a)(5) (1994).

In the instant case, Liberty Services' application projected the capital costs for the proposed project to be $3,131,810.00 with projected additional working capital costs of $185,000.00 to meet the start-up and initial operating expenses. Liberty Services' application anticipated that $2,505,448.00 would be funded by a bank loan, $626,362.00 would be funded by owner's equity, and $185,000.00 would be funded by the "unrestricted cash of the proponent." In effect, Liberty Services intended for $811,362.00—comprised of the amount allotted for owner's equity plus the amount allotted for unrestricted cash—to be supplied by John A. McNeill, Jr. and Ronald B. McNeill, the officers and owners of Liberty Services.

As this Court held in *Retirement Villages, Inc.*, 124 N.C. App. at 499, 477 S.E.2d at 699, criterion 5 does not preclude a Certificate of Need applicant from relying on the financial resources of another entity for its funding. However, "in cases where the project is to be funded other than by the [Certificate of Need] applicants, the application must contain evidence of a commitment to provide the funds by the funding entity." *Id.* Without a commitment, an applicant cannot adequately demonstrate availability of funds or the requisite financial feasibility. *See id.* Thus, we must determine whether there is sufficient evidence in the record to support a finding that Liberty Services' proposed funding sources—John McNeill, Jr. and Ronald McNeill—committed to supplying the funds at issue in this case—a total amount of $811,362.00.

The Department of Health and Human Services found that Liberty Services' application contained the following information pertaining to Liberty Services' commitment to finance the proposed project:

a. A certification page, executed by John A. McNeill, Jr., President of Liberty, which included a sworn statement that: 'The applicant will materially comply with the representations made in its application in its development of the project and the offering of the service pursuant to G.S. 131E-181(b);' and 'The information included in this application and all attachments is correct to the best of my knowledge and belief and it is my intent to carry out the proposed project as described' . . . .

b. Identification of Liberty's owners as John A. McNeill, Jr. and Ronald B. McNeill and Liberty's officers as John A. McNeill Jr., President, and Ronald B. McNeill, Secretary/Treasurer . . . .

c. A total capital cost projection of $3,131,810, of which a total of $2,505,448 was to be paid through a conventional loan and $626,362 paid by owner's equity; and a total working capital need projection of $185,000.00 ($45,000 start-up expenses + $140,000 initial operating expenses), to be funded by owner's equity . . . .

d. Financial statements of two principals of Liberty, John A. McNeill and Ronald B. McNeill, and their respective spouses. . . . .

e. A letter from Stewart E. Smith, Assistant Vice President of Wachovia Bank of North Carolina, NA, in which Mr. Smith certified that he had examined the financial positions of the principals of Liberty, John A. McNeill and Ronald B. McNeill and they have adequate finances to support the construction and permanent financing for the proposed facility; Mr. Smith further stated Wachovia has a long standing personal relationship with the Messrs. McNeill, and that Wachovia would consider financing $2,505,448 or 80% of the total construction cost of the project . . . .

f. A letter from Ronald McNeill, Vice President and [Chief Financial Officer] of Liberty, certifying that the principals of Liberty have sufficient funds to provide for the required equity and start up operating capital for the development of the project . . . .

While this evidence sufficiently shows the *ability* of the funding sources to provide the funds for the proposed project, it falls short of establishing a *commitment* by the McNeills to provide the funds at issue. A commitment is defined as "[a]n agreement to do something in the future, [especially] to assume a financial obligation". BLACK'S LAW DICTIONARY 267 (7th ed.1999). The aforementioned evidence, alone, does not establish an agreement on the part of the McNeills to provide the funds for the proposed project.

But the whole record before us contains additional evidence that reveals both an ability and a commitment by the funding sources to provide the relevant funds. The record contains financial statements which showed that John McNeill and his wife Deborah McNeill had an estimated net worth in excess of $18 million and Ronald McNeill and his wife Cynthia McNeill had an estimated net worth of $30 mil-

lion. Even though Liberty Services' application did not include commitment letters from the spouses of John McNeill and Ronald McNeill, the submitted financial statements demonstrated an ability by both John McNeill and Ronald McNeill separate and apart from their wives to provide an amount of $811,362.00 for capital and start-up operating expenses.

For instance, the financial statements of John and Deborah McNeill contained investments totaling $14,615,675.00 which included $3,534,002.00 in marketable securities. Similarly, the financial statements of Ronald and Cynthia McNeill contained $1,640,336.00 in stocks and bonds, and cash on hand totaling $99,455.00.

Under N.C. Gen. Stat. § 41-2.2,

(a) . . . shares of corporate stock or investment securities may be owned by any parties as joint tenants with rights of survivorship, and not as tenants in common, in the manner provided in this section.

(b)(1) A joint tenancy in shares of corporate stock or investment securities as provided by this section shall exist when such shares of securities indicate that they are owned with the right of survivorship, or otherwise clearly indicate an intention that upon the death of either party the interest of the decedent shall pass to the surviving party.

N.C. Gen. Stat. § 41-2.2 (1996).

In the instant case, the record contains no evidence as to whether the aforementioned assets were owned through joint tenancies with the right of survivorship. However, the absence of this evidence does not preclude us from finding that John and Ronald McNeill were empowered to sell one-half of their interests in those assets. *See Bullman v. Edney*, 232 N.C. 465, 61 S.E.2d 338 (1950) (holding that one who owns an undivided interest in chattel may sell such interest and thereby render the buyer a tenant in common with other co-owners); *see also Woolard v. Smith*, 244 N.C. 489, 94 S.E.2d 466 (1956) (a joint tenancy may be terminated by sale by one of the joint tenants); 20 Am. Jur.2d Cotenancy and Joint Ownership § 7 (1995) (joint tenants "are seised of the entire estate for the purposes of tenure and survivorship but of only an undivided part or interest for the purpose of forfeiture or immediate alienation"). Since John and Ronald McNeill were empowered to sell one-half of their interests in

the aforementioned assets, the financial statements evidence an availability of funds by both McNeills separate and apart from their spouses.

In addition to the financial statements, the letters submitted by Wachovia Bank of North Carolina, NA and Ronald McNeill further supported the McNeills' ability to provide the funds at issue.

As to the funding sources' commitment, the record contained a certification page signed by John McNeill, Jr. stating that it is "my intent to carry out the proposed project as described." Although he signed the certification page in his official capacity as President of Liberty Services, this factor alone does not preclude a finding that McNeill made a personal commitment to provide funds. *See Industrial Air, Inc. v. Bryant*, 23 N.C. App. 281, 285, 209 S.E.2d 306, 309 (1974) (stating that the "intent of the parties as revealed in the transaction as a whole, and not the signatures alone, determines liability for a contract").

Here, the record contains an affidavit of John McNeill, Jr. stating, *inter alia*, that:

7. Ron and I agreed to submit [the] financial statements in the application because we understood the need to demonstrate the availability of funds for the owner's projected equity contribution to the project; and as indicated by my certification of the application, we each were committed to providing all funds needed to build and operate the nursing home if it was approved.

Taken together, John McNeill's affidavit and the signed certification page show a commitment by the McNeills to provide funds.

Furthermore, Section 8.1 of Liberty Services' Operating Agreement provides further support of the McNeills' commitment. This section requires John McNeill, Jr. and Ronald McNeill, as members of Liberty Services, to make capital contributions whenever called upon by a vote of a majority-in-interest

Therefore, substantial evidence exists in the whole record to support the Department of Health and Human Services' findings that Liberty Services' application provided evidence of the funding sources' commitment which supported its conclusion that Liberty Services' application conformed with criterion 5.

Since the Department of Health and Human Services properly concluded that Liberty Services' application, as submitted, suf-

ficiently complied with all criteria, we need not address Johnston Center's assignment of error challenging the Department of Health and Human Services' conditional approval of Liberty Services' application.

### III. LIBERTY SERVICES' MOTION TO AMEND

[2] Johnston Center next argues that the Department of Health and Human Services' reversal of the Administrative Law Judge's denial of Liberty Services' motion to amend its prehearing statement was arbitrary or capricious. We disagree.

A decision by an administrative agency "is arbitrary and capricious if it clearly evinces a lack of fair and careful consideration or want of impartial, reasoned decision-making." *Joyce v. Winston-Salem State Univ.*, 91 N.C. App. 153, 156, 370 S.E.2d 866, 868, *cert. denied*, 323 N.C. 476, 373 S.E.2d 862 (1988). As explained by our Supreme Court:

The 'arbitrary or capricious' standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are 'patently in bad faith,' or 'whimsical' in the sense that 'they indicate a lack of fair and careful consideration' or 'fail to indicate any course of reasoning and the exercise of judgment . . . .'

*Act-Up Triangle v. Comm'n for Health Services of N.C.*, 345 N.C. 699, 707, 483 S.E.2d 388, 393 (citations omitted) (1997).

Under 26 NCAC 3.0104,

[t]he administrative law judge may serve all parties with an Order for Prehearing Statements together with, or after service of, the Notice of the Contested Case Filing and Assignment. The parties thus served shall, within 30 days of service file the requested statements setting out the party's present position on the following:

(1) The nature of the proceeding and the issues to be resolved;

(2) A brief statement of the facts and reasons supporting the party's position on each matter in dispute;

(3) A list of proposed witnesses with a brief description of his or her proposed testimony;

(4)  A description of what discovery, if any, the party will seek to conduct prior to the contested case hearing and an estimate of the time needed to complete discover;

(5)  Venue consideration;

(6)  Estimations of the length of the hearing;

(7)  The name, address, and telephone number of the party's attorney, if any; and

(8)  Other special matters.

Here, the Administrative Law Judge ordered the prehearing statements on 3 September 1997. However, Liberty Services did not intervene in the matter until 30 September 1997. At that time, the Administrative Law Judge did not file any orders requesting additional prehearing statements. Thus, although Liberty Services filed a prehearing statement, it was not required to do so.

Moreover, when Liberty Services filed its initial prehearing statement, Johnston Center had not filed its summary judgment motions. The only action taken by Johnston Center was the filing of its petition for a contested case. As a result, Liberty Services' prehearing statement that the Department of Health and Human Services "acted within its authority and jurisdiction, correctly, properly, reasonably, and lawfully in reviewing these applications and making its decision to approve Liberty" was made in response to Johnston Center's challenge to the Department of Health and Human Services' approval of Liberty Services' application. In fact, the prehearing statement only addressed Liberty Services' position on its own application. Given the fact that Johnston Center's summary judgment motions had not been filed when Liberty Services' prehearing statement was filed, Liberty Services' failure to address its position on Johnston Center's application was not unreasonable.

Hence, we conclude that the Department of Health and Human Services' decision to reverse the Administrative Law Judge's denial of Liberty Services' motion to amend its prehearing statement was not arbitrary or capricious.

IV.  JOHNSTON CENTER'S COMPLIANCE WITH CRITERION 5

[3] Finally, Johnston Center asserts that the Department of Health and Human Services' finding that its application failed to comply with

JOHNSTON HEALTH CARE CTR., LLC v. N.C. DEP'T OF HUMAN RES.

[136 N.C. App. 307 (2000)]

criterion 5 was unsupported by the evidence in the record, and was arbitrary or capricious. Specifically, Johnston Center argues that its application established the availability and commitment of funds required under criterion 5.

As previously stated, criterion 5 requires evidence of both a funding source's ability and commitment to provide the funds for the proposed project. *See Retirement Villages, Inc.*, 124 N.C. App. at 499, 477 S.E.2d at 699.

In the instant case, Johnston Center's application proposed total estimated start-up expenses of $100,000.00 and total estimated initial-operating expenses of $1,388,667.00. Johnston Center's application also stated that it would finance $285,000.00 of this total "working capital" through a $500,000.00 personal line of credit that its principal, James R. Smith, had with Central Fidelity Bank of Virginia. In fact, Mr. Smith's line of credit from the bank was Johnston Center's sole source of financing for this portion of its projected working capital costs.

As supporting documentation for Mr. Smith's line of credit, Johnston Center submitted a letter from Central Fidelity National Bank committing the bank to providing a line of credit to Mr. Smith. The letter provided that the line of credit would expire on 30 September 1997. However, Johnston Center's application contained a timetable for the proposed project which scheduled the commencement of construction of the project no sooner than October 1997 and scheduled the opening of the facility no sooner than December 1998. Therefore, Mr. Smith's line of credit expired before the commencement of the proposed project.

In response, Johnston Center asserts in its brief that the renewals in the bank's letter to Mr. Smith established a commitment by the bank to provide the portion of the working capital at issue. Nonetheless, the fact that the commitment letter expired constitutes substantial evidence in the record to support the Department of Health and Human Services' finding that Johnston Center's application failed to establish the availability and commitment of funds required under criterion 5.

Having determined that the record contains substantial evidence to show that Johnston Center's application failed to comply with criterion 5, we need not address Johnston Center's assignment of error contending that because its Certificate of Need application was con-

sistent with all applicable criteria, Johnston Center was entitled to the Certificate of Need award.

Affirmed.

Judges LEWIS and MARTIN concur.