IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-137

Filed: 19 September 2017

Office of Administrative Hearings, No. 16 DHR 08034

BLUE RIDGE HEALTHCARE HOSPITALS INC. d/b/a CAROLINAS HEALTHCARE SYSTEM – BLUE RIDGE, Petitioner,

v.

NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION, HEALTHCARE PLANNING AND CERTIFICATE OF NEED SECTION, Respondent,

and

CALDWELL MEMORIAL HOSPITAL, INC. and SCSV, LLC, Respondent-Intervenors.

Appeal by petitioner from Final Decision entered 3 October 2016 by Administrative Law Judge Selina Malherbe Brooks in the North Carolina Office of Administrative Hearings. Heard in the Court of Appeals 23 August 2017.

*Smith Moore Leatherwood LLP, by Maureen Demarest Murray, Carrie A. Hanger and Matthew Nis Leerberg, for petitioner-appellant Blue Ridge Healthcare Hospitals, Inc. d/b/a Carolinas Healthcare System – Blue Ridge.*

*Attorney General Joshua H. Stein, by Assistant Attorney General Jill A. Bryan and Special Deputy Attorney General June Ferrell, for respondent-appellee North Carolina Department of Health and Human Services.*

*Williams Mullen, by Joy Heath and Elizabeth D. Scott, for respondent-intervenors-appellees Caldwell Memorial Hospital, Inc. and SCSV, LLC.*

TYSON, Judge.

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

Blue Ridge Healthcare Hospitals, Inc. d/b/a Carolinas Healthcare System – Blue Ridge ("Blue Ridge") appeals from a final decision of the Administrative Law Judge ("ALJ"), which granted summary judgment in favor of the North Carolina Department of Health and Human Services ("DHHS"), Caldwell Memorial Hospital, Inc. ("Caldwell Memorial"), and SCSV, LLC. We affirm.

## I. Background

### A. Caldwell Memorial

Caldwell Memorial is a not-for-profit community hospital located in Lenoir, North Carolina, which became part of the UNC Health Care System in 2013. Caldwell Memorial operates and maintains eight operating rooms, which are the only operating rooms located in Caldwell County. Three of the operating rooms are located at Hancock Surgery Center ("HSC"), which is housed in an older building previously used as a shopping center. HSC is located approximately 0.6 miles from Caldwell Memorial, and is licensed as part of Caldwell Memorial.

In July 2015, Caldwell Memorial and SCSV, LLC (collectively, "Caldwell Memorial") filed a Certificate of Need ("CON") application with DHHS's Division of Health Service Regulation, Healthcare Planning and Certificate of Need Section ("the Agency"), seeking approval to establish Caldwell Surgery Center ("CSC"), a new separately-licensed ambulatory surgery center to be located in Granite Falls, one to two miles from the southern border of Caldwell County.

BLUE RIDGE HEALTHCARE HOSPS., INC. V. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

Caldwell Memorial seeks to create a second point of surgery access within a more densely populated area of Caldwell County in addition to the city of Lenoir. Ambulatory surgical centers are capable of offering surgical services to patients at a purported lower cost than surgeries performed inside of hospitals. Caldwell Memorial asserts an ambulatory surgery center is suited to attract and retain capable surgeons by offering physician investment opportunities, which are not available in hospital operating rooms. The propriety of this investment opportunity is not before us.

The total inventory of currently licensed operating rooms located in Caldwell County would not change as a result of Caldwell Memorial's proposal. Caldwell Memorial had sought previous approval in 2014 to relocate the three operating rooms from HSC to CSC, but the Agency denied the CON application.

## B. Blue Ridge

Blue Ridge maintains and operates six operating rooms at its Morganton hospital campus and four operating rooms at its Valdese hospital campus. It submitted written comments in opposition to the application, and participated in the public hearing held in September 2015. Blue Ridge had also submitted its objections to Caldwell Memorial's previous CON applications. Two other hospitals and an ambulatory surgery center in the extended geographical area also submitted comments in opposition to Caldwell Memorial's applications.

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

The proposed site for CSC is five miles from both Viewmont Surgery Center and Frye Medical Center, twelve miles from Catawba Valley Medical Center, and eleven miles from Blue Ridge's Valdese hospital campus. All of these facilities possessed surgical capacity during the Agency's review. Viewmont Surgery Center in Catawba County is the only multi-specialty ambulatory surgery center in the area, but does not offer the surgical specialties proposed in Caldwell Memorial's CON application, such as spine and vascular surgery. Blue Ridge notes the existence of a significant surplus of operating rooms in Caldwell, Burke, and Catawba Counties in support of its opposition to Caldwell Memorial's application.

C. Agency and ALJ Decision

By letter dated 28 December 2015, the Agency notified Caldwell Memorial of its decision to conditionally approve its application to establish the ambulatory surgery center. On 29 January 2016, Blue Ridge filed a petition for a contested case hearing in the Office of Administrative Hearings ("OAH") and challenged the Agency's decision to approve Caldwell Memorial's CON application. *See* N.C. Gen. Stat. § 131E-188(a) (2015) (providing any "affected person" is entitled to bring a contested case challenging the agency's decision on a CON application); N.C. Gen. Stat. § 131E-188(c) (defining "affected person" to include "any person who provides services, similar to the services under review, to individuals residing within the service area or geographic area proposed to be served by the applicant"). The ALJ

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

permitted Caldwell Memorial and Frye Regional Medical Center, LLC ("Frye") to intervene.

Caldwell Memorial and the Agency moved for summary judgment before the OAH on 9 September 2016. Blue Ridge and Frye opposed the motion. By final decision entered on 3 October 2016, the ALJ granted summary judgment in favor of Caldwell Memorial and the Agency. Blue Ridge appeals.

## II. Jurisdiction

Jurisdiction lies in this Court from the final decision of the ALJ pursuant to N.C. Gen. Stat. §§ 131E-188(b) and 7A-27(a) (2015).

## III. Issues

Blue Ridge argues the Agency erred by ignoring or applying certain criteria set forth in N.C. Gen. Stat. § 131E-183 when it approved Caldwell Memorial's CON application and asserts genuine issues of material fact exist regarding the conformity of the CON application with the statutory review criteria.

## IV. Standard of Review

The North Carolina Administrative Code governs our review of the ALJ's decision, and provides:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

(c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. . . .

(d) In reviewing a final decision allowing . . . summary judgment, the court may enter any order allowed by G.S. 1A-1, Rule 12(c) or Rule 56. . . .

N.C. Gen. Stat. § 150B-51 (2015).

"This Court has interpreted subsection (a) to mean that the ALJ in a contested case hearing must determine whether the petitioner has met its burden in showing that the agency substantially prejudiced the petitioner's rights. . . . [and] that the agency erred in one of the ways described above." *Surgical Care Affiliates, LLC v. N.C. Dep't of Health & Human Servs.*, 235 N.C. App. 620, 624, 762 S.E.2d 468, 471 (2014) (citation, quotation marks, and brackets omitted).

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

Here, Blue Ridge appeals from the ALJ's order granting summary judgment. Summary judgment is properly entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015).

The evidence "must be viewed in a light most favorable to the non-moving party." *Patmore v. Town of Chapel Hill*, 233 N.C. App. 133, 136, 757 S.E.2d 302, 304, *disc. review denied*, 367 N.C. 519, 758 S.E.2d 874 (2014) (citation omitted). "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant successfully makes such a showing, the burden then shifts to the nonmovant to come forward with specific facts establishing the presence of a genuine factual dispute for trial." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citations omitted).

"We review [the ALJ's] order granting or denying summary judgment *de novo*. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citations and internal quotation marks omitted).

## V. Agency's Application of N.C. Gen. Stat. § 131E-183 Criteria

Blue Ridge Healthcare Hosps., Inc. v. N.C. Dept. of Health & Human Servs.

*Opinion of the Court*

Our General Assembly recognized that potential and projected profits would drive the development of medical facilities and services in the marketplace. The General Assembly concluded the public is best served by having access to affordable healthcare that is distributed throughout the State based upon certificates of need. *See* N.C. Gen. Stat. § 131E-175(1)-(4) (2015). Otherwise, an over-abundance of facilities in certain areas would "lead[] to unnecessary use of expensive resources and overutilization of health care services" and result in greater costs to the public. *See* N.C. Gen. Stat. § 131E-175(4), (6)-(10).

The Agency's decision to approve an applicant's CON is based upon the Agency's determination of whether the applicant has complied with the list of review criteria set forth in N.C. Gen. Stat. § 131E-183(a). "The [Agency] shall review all applications utilizing the criteria outlined in this subsection and shall determine that an application is either consistent with or not in conflict with these criteria before a certificate of need for the proposed project shall be issued." N.C. Gen. Stat. § 131E-183(a) (2015); *see also Parkway Urology, P.A., v. N.C. Dep't of Health & Human Servs.*, 205 N.C. App. 529, 534, 696 S.E.2d 187, 191-92 (2010), *disc. review denied*, 365 N.C. 78, 705 S.E.2d 753 (2011).

### A.  Geographic Scope of Agency's Review

Blue Ridge argues the agency incorrectly limited its analysis of Criteria 3, 3a, 4, and 6 to the circumstances in Caldwell County, and did not consider any

BLUE RIDGE HEALTHCARE HOSPS., INC. V. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

facilities, utilization, needs of the population, or circumstances in any of the other counties from which Caldwell Memorial is projected to draw patients to the new facility.

Blue Ridge further asserts the Agency failed to assess how the needs of patients from other counties would be met by the proposed relocation of operating rooms or how they would be impacted by physicians' plans to perform cases and procedures at the new facility, resulting in the reduction of services provided at facilities in other counties.

The four criteria of N.C. Gen. Stat. § 131E-183(a) at issue requires the following of the CON applicant:

> (3) The applicant shall identify the *population to be served* by the proposed project, and shall demonstrate the need that this population has for the services proposed, and the extent to which all residents of the area, and, in particular, low income persons, racial and ethnic minorities, women, handicapped persons, the elderly, and other underserved groups are likely to have access to the services proposed.
>
> (3a) In the case of a reduction or elimination of a service, including the relocation of a facility or a service, the applicant shall demonstrate that *the needs of the population presently served* will be met adequately by the proposed relocation or by alternative arrangements, and the effect of the reduction, elimination or relocation of the service on the ability of low income persons, racial and ethnic minorities, women, handicapped persons, and other underserved groups and the elderly to obtain needed health care.

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

(4) Where alternative methods of meeting the needs for the proposed project exist, the applicant shall demonstrate that the least costly or most effective alternative has been proposed.

. . . .

(6) The applicant shall demonstrate that the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities.

N.C. Gen. Stat. § 131E-183(a) (emphasis supplied).

While Criterion 3 requires identification of the "population to be served" and the "need that this population has for the services proposed," the statute does not set forth the precise method by which this analysis is to be performed. Criterion 3 does not set forth guidance concerning the geographical location of the "population to be served" or the "area." N.C. Gen. Stat. § 131E-183(a)(3). Caldwell Memorial's CON application projected that 50.2% of the new facility's operating room's patients would come from Caldwell County, and 49.8% would come from outside of Caldwell County. For the procedure room, only 38.52% of the patients are projected to come from Caldwell County and 61.48% from elsewhere.

Similarly, Criterion 3a requires identification and an analysis of the "population presently served," which includes patients from a multi-county area. N.C. Gen. Stat. § 131E-183(3a). Blue Ridge argues the Agency limited its analysis of the reduction in services to facilities and patients located within Caldwell

BLUE RIDGE HEALTHCARE HOSPS., INC. V. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

County, and ignored the impact on medically underserved groups in other counties, who would be required to travel farther to the new facility.

Criteria 4 and 6 also do not set forth any geographical scope for the Agency's analysis. With regard to Criterion 4, Blue Ridge asserts the Agency improperly limited its analysis of whether Caldwell Memorial "demonstrate[d] that the least costly or most effective alternative has been proposed," where alternative methods for meeting the proposed project's needs exist. N.C. Gen. Stat. § 131E-183(a)(4).

Finally, Blue Ridge asserts the Agency ignored the numerous surgical facilities located in Burke County, very near to the proposed site of the Granite Falls facility, in applying Criterion 6 to determine whether Caldwell Memorial demonstrated the "project will not result in unnecessary duplication of existing or approved health service capabilities or facilities." N.C. Gen. Stat. § 131E-183(a)(6).

Blue Ridge relies upon this Court's decision in *AH N.C. Owner LLC v. N.C. Dep't of Health & Human Servs.*, 240 N.C. App. 92, 771 S.E.2d 537 (2015). That case dealt with the Agency's interpretation of Criterion 20 of N.C. Gen. Stat. § 131E-183(a), which states "[a]n applicant already involved in the provision of health services shall provide evidence that quality care has been provided in the past." N.C. Gen. Stat. § 131E-183(a)(20).

This Court recognized, "[b]ecause the General Assembly has not articulated with specificity how the Agency should determine an applicant's conformity with

- 11 -

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

Criterion 20, *the Agency was authorized to establish its own standards* in assessing whether an applicant that was already involved in providing health care services had provided quality care in the past." *AH N.C. Owner*, 240 N.C. App. at 100, 771 S.E.2d at 542 (emphasis supplied).

In *AH N.C. Owner*, the Agency reviewed multiple competing CON applications, which proposed to expand the number of nursing home beds in Wake County in response to a determination of need. *Id.* at 95, 771 S.E.2d at 539. Consistent with the Agency's prior practice, it evaluated each applicant's conformity with Criterion 20 by examining each applicant's history of quality of care solely within Wake County, which resulted in an evaluation of past quality of care for those applicant's who already operated facilities in Wake County. *Id.* at 101, 771 S.E.2d at 542-43. The ALJ rejected the Agency's limit of its review of Criterion 20 to only Wake County. *Id.*

This Court explained:

> As the ALJ noted, certain review criteria in N.C. Gen. Stat. § 131E-183(a) are specifically limited to the service area of the proposed project. Criterion 18a, for example, requires the applicant to "demonstrate the expected effects of the proposed services on competition *in the proposed service area . . . .*" N.C. Gen. Stat. § 131E-183(a)(18a) (emphasis added). Criterion 20, on the other hand, contains no such geographic limitation.
>
> It is well established that in order to determine the legislature's intent, statutory provisions concerning the same subject matter must be construed together and

BLUE RIDGE HEALTHCARE HOSPS., INC. V. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

harmonized to give effect to each. *Cape Hatteras Elec. Membership Corp. v. Lay*, 210 N.C. App. 92, 101, 708 S.E.2d 399, 404 (2011). Furthermore, as this Court has previously explained, "[w]hen a legislative body includes particular language in one section of a statute but omits it in another section of the same [statute], it is generally presumed that the legislative body acts intentionally and purposely in the disparate inclusion or exclusion." *N.C. Dep't of Revenue v. Hudson*, 196 N.C. App. 765, 768, 675 S.E.2d 709, 711 (2009) (citation, quotation marks, and brackets omitted).

*Id.* at 111, 771 S.E.2d at 548-49 (alterations in original).

This Court affirmed the ALJ and held "basic principles of statutory construction support the ALJ's conclusion that the General Assembly did not intend for the Agency's evaluation of an applicant's past quality of care to be limited to the service area of the proposed project." *Id.* at 112, 771 S.E.2d at 549.

As specifically stated in *AH N.C. Owner*, the Agency is authorized to "establish its own standards" to determine whether the applicant met the requirements of the statutory criteria. *Id.* at 100, 771 S.E.2d at 542. "It is well settled that when a court reviews an agency's interpretation of a statute it administers, the court should *defer to the agency's interpretation of the statute . . . as long as the agency's interpretation is reasonable and based on a permissible construction of the statute.*" *Craven Reg'l Med. Auth. v. N.C. Dep't of Health & Human Servs.*, 176 N.C. App. 46, 58, 625 S.E.2d 837, 844 (2006) (citations omitted) (emphasis supplied).

BLUE RIDGE HEALTHCARE HOSPS., INC. V. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

"If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Cty. of Durham v. N.C. Dep't of Env't & Natural Res.*, 131 N.C. App. 395, 397, 507 S.E.2d 310, 311 (1998) (citation, quotation marks, and brackets omitted), *disc. review denied*, 350 N.C. 92, 528 S.E.2d 361 (1999).

Our decision in *AH N.C. Owner* is distinguishable and does not control our analysis and outcome here. In that case, in "consider[ing] whether deference should be accorded to the Agency's interpretation of . . . the appropriate geographic scope of the quality of care assessment required under Criterion 20," the Court determined the existence of "no logical basis for disregarding such information evidencing quality of care on a statewide level[,]" and "such a policy actually contravenes one of the primary purposes of the CON laws." *AH N.C. Owner*, 240 N.C. App. at 110-13, 771 S.E.2d at 548-49. The Court further stated, "[s]ignificantly . . . Agency employees were unable to identify a plausible justification for its past interpretation of the geographic scope element of Criterion 20." *Id.* at 113, 771 S.E.2d at 549.

Here, unlike in *AH N.C. Owner*, Martha Frisone, Assistant Chief of the DHHS's CON section, testified by deposition that "it has long been Agency practice to use the same standards duly promulgated in the [administrative] rules when evaluating the statutory criteria, which don't [sic] contain any standards at all[.]" The Agency's practice is consistent with the law.

BLUE RIDGE HEALTHCARE HOSPS., INC. V. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

N.C. Gen. Stat. § 131E-183(b) specifically states the Agency "is authorized to adopt rules for the review of particular types of applications that will be used in addition to those criteria outlined in subsection (a) . . . and may vary according to the purpose for which a particular review is being conducted or the type of health service reviewed." *See Craven*, 176 N.C. App. at 51, 625 S.E.2d at 841 (recognizing "the Agency has adopted rules to be used as regulatory criteria *in conjunction* with Criterion 3" (emphasis supplied)).

Ms. Frisone further stated:

> Where a patient goes and where a surgeon goes is surgeon and patient choice. And so the need methodology itself for determining a need for additional ORs does not take into account surpluses in adjoining counties, and we don't take them into account either in reviewing a – certainly not in reviewing a proposal to relocate two existing dedicated outpatient ORs and license them separately as an AMSU, which would reduce the cost for the patient.

Ms. Frisone explained the Agency reviewed the statutory criteria in conjunction with the provisions of the North Carolina Administrative Code, which state the requirements an applicant must meet to establish need for operating rooms and ambulatory surgical facilities. *See* 10A N.C.A.C. 14C.2101 *et seq*. Title 10A, Subchapter 14C of the Administrative Code sets forth the "Certificate of Need Regulations."

Section 2100 states the "criteria and standards for surgical services and operating rooms," and defines "service area" as "the Operating Room Service Area

BLUE RIDGE HEALTHCARE HOSPS., INC. V. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

as defined in the applicable State Medical Facilities Plan ['SMFP'].” 10A N.C.A.C. 14C.2101(10).  In 2015, the SMFP defined “service area” as “the operating room planning area in which the operating room is located.  The operating room planning areas are the single and multicounty groupings shown in Figure 6-1.”  Figure 6-1 of the SMFP shows Caldwell County as a single county operating room service area.

Unlike in *AH N.C. Owner*, the Agency used its articulated and established practice of applying the standards and definitions set forth in the Administrative Code for determining certificates of need, where N.C. Gen. Stat. § 131E-183(a) is silent on the geographic scope of the Agency’s review.  Giving deference to the Agency’s procedures and practice, we hold Blue Ridge has failed to meet its burden to show the Agency’s interpretation and application of N.C. Gen. Stat. § 131E-183(a) is unreasonable or based on an impermissible construction of the statute. *Craven*, 176 N.C. App. at 58, 625 S.E.2d at 844.  Blue Ridge’s argument is overruled.

B. Application of Criterion 6

Blue Ridge argues the Agency failed to apply Criterion 6 as an independent criterion, where the findings under Criterion 6 simply repeat findings under other criteria.  Blue Ridge bases its claim upon the inclusion of the following language in the Agency’s findings for Criterion 6:  “The discussions regarding analysis of need, alternatives and competition found in Criteri[a] (3), (4) and (18a), respectively, are incorporated herein by reference.” The Agency concluded Caldwell Memorial

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

"adequately demonstrate[s] that the proposed project would not result in the unnecessary duplication of existing or approved ORs in Caldwell County."

Ms. Frisone explained that the Agency evaluates each criterion independently, and frequently relies upon the same facts in making its determination under each criterion. The Agency is permitted to rely upon the same facts and evidence in reviewing multiple criteria. Blue Ridge has failed to show the Agency failed to undertake an independent review and application of Criterion 6.

## C. Application of Criterion 5

Blue Ridge argues the Agency erred in its application of Criterion 5, which requires Caldwell Memorial to show:

> (5) Financial and operational projections for the project shall demonstrate the availability of funds for capital and operating needs as well as the immediate and long-term financial feasibility of the proposal, based upon reasonable projections of the costs of and charges for providing health services by the person proposing the service.

N.C. Gen. Stat. § 131E-183(a)(5).

Criterion 5 requires an applicant to demonstrate: (1) the availability of funds for capital and operating needs, and (2) the financial feasibility of the proposal based upon the applicant's reasonable projections. *Id.*

The Agency must "determine the availability of funds for the project from the entity responsible for the funding[.]" *Retirement Villages, Inc. v. N.C. Dep't of*

BLUE RIDGE HEALTHCARE HOSPS., INC. V. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

*Human Res.*, 124 N.C. App. 495, 498, 477 S.E.2d 697, 699 (1996). "[I]n cases where the project is to be funded other than by the applicants, the application must contain evidence of a commitment to provide the funds by the funding entity." *Id.* at 499, 477 S.E.2d at 699. "Without a commitment, an applicant cannot adequately demonstrate availability of funds or the requisite financial feasibility." *Johnston Health Care Ctr., L.L.C. v. N.C. Dep't of Human Res.*, 136 N.C. App. 307, 313, 524 S.E.2d 352, 357 (2000). "[T]he above statutory criterion does not require the submission of financial statements by the applicants. It merely requires the Agency to determine the availability of funds for the project from the entity responsible for funding, which may or may not be an applicant." *Retirement Villages*, 124 N.C. App. at 498-99, 477 S.E.2d at 699.

In its CON application, Caldwell Memorial asserted the CSC shell building would be constructed by Brackett Flagship Properties, LLC ("BFP"). BFP would create a limited liability company to serve as the landlord and lease the property to Caldwell Memorial. Caldwell Memorial would be responsible for the design and upfit of the building. Caldwell Memorial estimated the total cost associated with the building to be $4,350,000.00.

The Agency determined that total capital cost of the project will be $3,650,000.00, and the working capital costs will be $700,000.00. Caldwell Memorial provided a letter dated 8 July 2015 from a Vice President of First Citizens

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

Bank, which includes two term sheets of the proposed financing for the project. One shows the financing for the capital costs of $3,650,000.00 and the other shows the financing for the working capital costs of $700,000.00.

Caldwell Memorial also provided a letter dated 8 July 2015 from appellant SCSV, LLC, which stated SCSV was committed to utilizing the funding provided by the bank to develop the facility. Caldwell Memorial provided another letter from its vice president and chief financial officer, which confirmed that Caldwell Memorial is committed to financing a portion of the capital costs in the amount of $150,000.00, and the hospital has sufficient funds on hand to cover this cost. The Agency concluded Caldwell Memorial "adequately demonstrate[d] that sufficient funds will be available for the capital and working capital needs of the project," and "that the financial feasibility of the proposal is based upon reasonable projections of costs and charges."

Blue Ridge argues the Agency erred in determining Criterion 5 was satisfied where Caldwell Memorial's CON application contained no documentation of BFP's finances or funding source. We disagree.

Our Court has determined similar arrangements to be in conformity with the requirements of Criterion 5. In *Total Renal Care of N.C., LLC v. N.C. Dep't of Health & Human Servs.*, 171 N.C. App. 734, 615 S.E.2d 81 (2005), the Agency awarded a CON to Bio-Medical Applications ("BMA") for ten kidney dialysis

BLUE RIDGE HEALTHCARE HOSPS., INC. V. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

machines, to be located inside a building to be leased from a lessor, who would "upfit, install, and build" the building. *Id.* at 735-36, 615 S.E.2d at 82. The ALJ determined BMA's application was non-conforming to Criterion 5, because BMA had failed to include the future lessor as an applicant. *Id.* This Court overruled the ALJ and upheld the Agency's determination that BMA was not required to name the lessor as an applicant, and BMA's CON application was in conformity with the statutory criteria. *Id.* at 739, 615 S.E.2d at 84.

Caldwell Memorial's costs to lease the building, upfit and house the ambulatory surgery center are properly asserted and accounted for. Its application separately documented the availability and commitment of funds for the acquisition of the specialized medical equipment necessary to develop and improve the ambulatory surgery center in the shell building. Caldwell Memorial was not required to show a source of funding for BFP's construction of the shell building. *See id.* Blue Ridge's argument is overruled.

VI. Substantial Prejudice

As an alternate basis to affirm the ALJ's decision, it is well-established that "when the petitioner alleges [agency error], the petitioner *must also* prove . . . substantial prejudice." *Surgical Care Affiliates,* 235 N.C. App. at 628, 762 S.E.2d at 473-74. Even if the Agency erred in its application of the statutory criteria in reviewing Caldwell Memorial's CON, Blue Ridge has also failed to meet its burden

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

of showing prejudice in the Agency's decision to grant the CON to reverse the ALJ's decision.

The Agency determined that Caldwell Memorial's proposed project does not involve the addition of any new health service facility beds, services, or equipment. The project involves relocating three existing operating rooms from HSC to a separately licensed and freestanding ambulatory surgical facility. The Agency determined Caldwell Memorial owns and operates all eight operating rooms in Caldwell County, and there are no existing ambulatory surgical facilities in Caldwell County. The total number of operating rooms currently located in Caldwell County will not change. Only how those operating rooms are licensed, and where they are located within Caldwell County, will change under the CON.

Blue Ridge argues it would lose patients and profits due to the approval of the CSC facility. Blue Ridge asserts Dr. Jason Zook, a spine surgeon who operates at Blue Ridge's facility, has expressly stated he intends to direct all of his surgeries to CSC in Granite Falls. Blue Ridge asserts it has spent significant funds in recruiting Dr. Zook and establishing Blue Ridge's spine surgery program. Blue Ridge also argues its other services, specifically the neonatal and emergency services, would be compromised by losing the profits provided by Dr. Zook's surgeries.

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

Our Court has explained that adopting Blue Ridge's argument "would have us treat any increase in competition resulting from the award of a CON as inherently and substantially prejudicial to any pre-existing competing health service provider in the same geographic area. This argument would eviscerate the substantial prejudice requirement contained in N.C. Gen. Stat. § 150B-23(a)." *Parkway Urology,* 205 N.C. App. at 539, 696 S.E.2d at 195.

As in the present case, the appellant in *CaroMont Health, Inc. v. N.C. Dep't of Health & Human Servs.*, 231 N.C. App. 1, 8, 751 S.E.2d 244, 249 (2013), asserted that specific evidence of financial harm resulting from the award of a CON constitutes a showing of substantial prejudice. This Court rejected the argument in *CaroMont* and held that such a physician-directed "shift" of cases is "normal competition." *Id.* at 8, 751 S.E.2d at 250.

The Court explained that the claim of harm arose "solely out of the fact that competition would be increased by virtue of the authorization of two additional GI endoscopy rooms located in Gaston County" so "patients and doctors in Gaston County would now have a choice between CaroMont's facilities and another separate facility also located in Gaston County." *Id.* at 9, 751 S.E.2d 250. As in *CaroMont*, Blue Ridge has asserted harm from normal competition, which does not constitute a showing of substantial prejudice from the Agency's allowance of the CON. *Id.*

BLUE RIDGE HEALTHCARE HOSPS., INC. v. N.C. DEPT. OF HEALTH & HUMAN SERVS.

*Opinion of the Court*

Blue Ridge's failure to show substantial prejudice is also fatal to its contested case. The ALJ correctly granted summary judgment in favor of the Agency and upholding the Agency's approval of the CON for Caldwell Memorial.

## VII. Conclusion

We review the Agency's application of the criteria set forth in N.C. Gen. Stat. § 131E-183(a) with deference to the Agency's interpretation of the statute. *Craven Reg'l Med. Auth.*, 176 N.C. App. at 58, 625 S.E.2d at 844. Blue Ridge has failed to carry its burden to show the Agency's interpretation was either unreasonable or not based upon a permissible construction of the statute. *See id.*

As an alternative and independent basis for our holding, Blue Ridge has also failed to show it was substantially prejudiced by the Agency's approval of Caldwell Memorial's CON application and issuance of the CON. *See Caromont*, 231 N.C. App. at 8-9, 751 S.E.2d at 249-50. The ALJ's order granting summary judgment in favor of Caldwell Memorial is affirmed. *It is so ordered*.

AFFIRMED.

Judges ELMORE and STROUD concur.