IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-451

No. COA20-102

Filed 7 September 2021

Office of Administrative Hearings, No. 19 DHR 01091

FMSH L.L.C., Petitioner,

v.

North Carolina Department of Health and Human Services, Division of Health Service Regulation, Healthcare Planning and Certificate of Need Section, Respondent,

and

Sentara Albemarle Regional Medical Center, LLC, and Sentara Healthcare, Respondent-Intervenors.

Appeal by Respondents from Final Decision entered 9 October 2019 by Administrative Law Judge Donald W. Overby in the Office of Administrative Hearings. Heard in the Court of Appeals 12 May 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney Generals Bethany A. Burgon and Kimberly Randolph, and Fox Rothschild LLP, by Marcus C. Hewitt and Elizabeth Sims Hedrick, for the Respondent- and Respondent-Intervenor-Appellants.*
>
> *FMSH, L.L.C., by Managing Member Catherine Fleming, pro se.*
>
> *Wyrick Robbins Yates & Ponton LLP, by Frank Kirschbaum and Charles George, for amicus curiae The County of Franklin, North Carolina.*
>
> *Nelson Mullins Riley & Scarborough LLP, by Denise M. Gunter and Chelsea K. Barnes, for amicus curiae FirstHealth of the Carolinas, Inc.*

*Poyner Spruill, LLP, by Matthew Fisher, for amici curiae NCHA, Inc., and North Carolina Baptist Hospital.*

*K&L Gates, LLP, by Gary Qualls and Susan Hackney, for amici curiae University Health Systems of Eastern Carolina, Inc. d/b/a Vidant Health and The Outer Banks Hospital, Inc.*

*Fox Rothschild, LLP, by Terrill Johnson Harris, for amici curiae The Moses H. Cone Memorial Hospital Operating Corporation and The Moses H. Cone Memorial Hospital.*

GRIFFIN, Judge.

Respondent Healthcare Planning and Certificate of Need Section of the North Carolina Department of Health and Human Services (the "Agency") and Respondent-Intervenors Sentara Albemarle Regional Medical Center, LLC, and Sentara Healthcare (together, "Sentara") appeal from the final decision of an administrative law judge in the Office of Administrative Hearings directing the Agency to transfer two Certificates of Need authorizing operation of a Legacy Medical Care Facility from Sentara to Petitioner FMSH, L.L.C. ("FMSH"). The final decision held that FMSH could not be required to acquire the physical facilities previously operated under the Certificates of Need as a condition precedent to its receipt of the Certificates of Need. We reverse the final decision and remand for entry of an order granting summary judgment to the Agency and Sentara.

## I.    Factual and Procedural History

¶ 2    The Sentara Kitty Hawk Ambulatory Surgery Center ('the Facility") was a multi-specialty ambulatory surgery facility operated from 1989 to 2017 in Kitty Hawk. In 1989, the Agency issued a Certificate of Need ("CON") to Regional Medical Services, Inc. ("RMS"), for the establishment of an ambulatory surgery facility at 5200 North Croatan Highway in Kitty Hawk. In 2002, the Agency issued to RMS a second CON authorizing RMS to open a diagnostic center at the Facility. Together, the two CONs allowed RMS to maintain two operating rooms and diagnostic equipment within the Facility.

¶ 3    In late 2013 or early 2014, Sentara acquired all of RMS's assets regarding the Facility, including the CONs, and continued operating the Facility. In late 2017, Sentara closed the Facility. At the time of the administrative hearing in this case, Sentara had no plans to reopen or resume operation of either the ambulatory facility or diagnostic center portion of the Facility.

¶ 4    On 25 June 2018, FMSH notified the Agency that it intended to reopen the Facility. FMSH proposed that its intended reopening of the Facility was exempt from the CON review process because the Facility qualified as a "Legacy Medical Care Facility ["LMCF"]" under N.C. Gen. Stat. 131E-184(h). At the time of its request, FMSH had no legal interest in the Facility, and had not contacted Sentara about purchasing or reopening the Facility.

¶ 5    On 31 January 2019, the Agency advised FMSH by response letter that it

agreed FMSH's "proposal [was] exempt from [CON] review under N.C. Gen. Stat. § 131E-184(h)." The Agency further stated that it knew FMSH had not entered into any negotiations to purchase the Facility from Sentara, and that it would not "knowingly issue [an] exempt from review determination[] for [a] hypothetical proposal[] to acquire an existing health service facility." The Agency informed FMSH that its request to reopen the Facility would be exempt from the CON review process under two conditions: First, FMSH was required to legally acquire the Facility from Sentara. Second, FMSH would be required to reopen the Facility by 24 June 2021, within thirty-six months of FMSH's written notice of intent to reopen.

¶ 6        FMSH filed a petition for a contested case hearing which challenged the Agency's two conditions for exemption approval. FMSH and the Agency each moved for summary judgment. On 9 October 2019, an administrative law judge ("ALJ") entered a Final Decision from the Office of Administrative Hearings, determining that the Agency did not have the authority to impose its first condition requiring FMSH to acquire a legal interest in the Facility. The Final Decision granted summary judgment to FMSH and directed the Agency to transfer the CONs from Sentara to FMSH. The Agency and Sentara timely appeal.

## II.    Analysis

¶ 7        The Agency and Sentara argue that, by granting summary judgment in FMSH's favor, the ALJ reached an "impermissible" decision which "fail[ed] to defer

to the Agency's interpretation, which [was] reasonable and consistent with the language of the statute." We agree.

¶ 8 We review an ALJ's final decision granting summary judgment *de novo*, considering all evidence presented in the light most favorable to the non-moving party. *Blue Ridge Healthcare Hosps. Inc., v. N.C. Dep't of Health & Hum. Servs., Div. of Health Serv. Regul., Healthcare Plan. & Certificate of Need Section*, 255 N.C. App. 451, 455–56, 808 S.E.2d 271, 274 (2017) (citations omitted). Summary judgment is properly granted if the record shows "that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Ron Medlin Const. v. Harris*, 364 N.C. 577, 580, 704 S.E.2d 486, 488 (2010) (citation and quotation marks omitted); N.C. R. Civ. P. 56(c). A Court reviewing the final decision of an ALJ may "affirm the decision[,]" "remand the case for additional proceedings[,]" or "reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are . . . (4) [a]ffected by . . . error of law[.]" N.C. Gen. Stat. § 150B-51(b) (2019).

¶ 9 Our analysis begins by acknowledging that no issues of material fact were present in the Record before the ALJ. The parties agreed on the material facts of the case in their pleadings in the contested hearing below, and each motioned for the ALJ to determine the case in their favor as a matter of law. The only issue before this Court is whether the ALJ properly construed the relevant statutory authority.

¶ 10    The Agency initially determined that it would not issue an exemption to "reopen" the Facility without CON review because FMSH did not own it and required FMSH to first "acquire" the Facility by acquiring legal ownership of the Facility from Sentara.  The ALJ held that the Agency had misinterpreted the statutory meaning of "acquire or reopen" as the terms are used in N.C. Gen. Stat. § 131E-184(h).  The question, then, is whether section 131E-184(h) requires a party who intends to "acquire or reopen" a LMCF to first have legal ownership of that facility.

¶ 11    Chapter 131E of the North Carolina General Statutes details the purpose of North Carolina's CON law and the review process by which the Agency may determine the need for and distribute CONs.  Upon its determination that a geographical area is in need of health services, the Agency first establishes a schedule of time in which it will receive applications from entities that offer to provide the needed services.  N.C. Gen. Stat. §§ 131E-177, 131E-182 (2019).  Applicant-entities then submit applications to the Agency describing the entity's plan to fulfill certain criteria, including:  how the area's health service need will be fulfilled; which population will be served and why that population needs service; how increased health service competition will affect the service area; and what is the availability of human and financial resources to accommodate the plan.  N.C. Gen. Stat. § 131E-183 (2019).

¶ 12    The Agency reviews submitted applications for a period of up to ninety days.

During this time it may solicit or receive written comments and/or conduct public hearings to discuss the applications. N.C. Gen. Stat. § 131E-185 (2019). This review period may be extended by up to sixty days if additional information is requested from the applicants. N.C. Gen. Stat. § 131E-185(c). The Agency then issues a written decision to "approve," "approve with conditions," or "deny" each application, outlining its findings, conclusions, and criteria used. N.C. Gen. Stat. § 131E-186 (2019). The Agency ordinarily issues a CON to an applicant-entity within thirty-five days of its decision to approve, or approve with conditions, the application. N.C. Gen. Stat. § 131E-187(c)(1) (2019). However, the issuance of a CON may be delayed indefinitely by an applicant's filing of a contested case hearing challenging the Agency's decision. N.C. Gen. Stat. § 131E-187 (2019).

¶ 13    The routine CON review process is statutorily sanctioned to take between 125 and 190 days. At the end of this process, an entity which receives or "subsequently acquire[s], in any matter whatsoever permitted by law[,]" a CON is thereafter "required to materially comply with the representations made in its application for that [CON]." N.C. Gen. Stat. § 131E-181(b) (2019).

¶ 14    A CON may be transferred or reassigned by an active health service provider, but only if the transfer or reassignment complies with the terms of N.C. Gen. Stat. § 131E-189(c). N.C. Gen. Stat. § 131E-181(a). The transfer or reassignment of a CON by an active health service provider does not require the recipient to undergo the full

CON review process. N.C. Gen. Stat. § 131E-184(a)(8) (2019) ("[T]he [Agency] shall exempt from [CON] review a new institutional health service if it receives prior written notice from the entity proposing . . . [t]o acquire an existing health service facility, including equipment owned by the health service facility at the time of acquisition.").[1] Rather, the recipient-entity "will be subject to the requirement that the service be provided consistent with the representations made in the application and any applicable conditions the [Agency] placed on the [CON]." N.C. Gen. Stat. § 131E-189(c) (2019); *see* N.C. Gen. Stat. § 131E-190(i) (2019) (subjecting CON holder to civil suit for "operating a service which materially differs from the representations made in its application for that [CON]").

¶ 15     An entity may also obtain a CON to operate a health facility without undergoing the usual CON review process if it meets one of the other exemptive criteria in N.C. Gen. Stat. § 131E-184. Under section 131E-184(h), relevant to this appeal, the Agency "must exempt from [CON] review the acquisition or reopening of a [LMCF]." N.C. Gen. Stat. § 131E-184(h) (2019). A "LMCF" is defined in chapter 131E as a facility that (1) "[i]s not presently operating[,]" (2) [h]as not continuously operated for at least the last six months[,]" and (3) was operated within the last twenty-four months by a licensed operator for the primary purpose of offering

---

[1] *Cf.* Fla. Stat. §§ 408.036, 408.042 (2019) (requiring the transfer of a CON to undergo an expedited review process verifying the recipient's financial resources).

diagnostic, therapeutic, or rehabilitative services. N.C. Gen. Stat. § 131E-176(14f) (2019). Section 131E-184(h) also requires the entity to provide the Agency with written notice of how, where, and when it intends to operate the LMCF:

> The person seeking to operate a [LMCF] shall give the [Agency] written notice of all of the following:
>
> (1) Its intention to acquire or reopen a [LMCF] within the same county and the same service area as the facility that ceased continuous operations. If the [LMCF] will become operational in a new location within the same county and the same service area as the facility that ceased continuous operations, then the person responsible for giving the written notice required by this section shall notify the [Agency], as soon as reasonably practicable and prior to becoming operational, of the new location of the [LMCF]. For purposes of this subdivision, "service area" means the service area identified in the North Carolina State Medical Facilities Plan in effect at the time the written notice required by this section is given to the Department.
>
> (2) That the facility will be operational within 36 months of the notice.

N.C. Gen. Stat. § 131E-184(h).

¶ 16    The "cardinal principle" of statutory construction is "to give effect to the legislative intent." *State v. Tew*, 326 N.C. 732, 738–39, 392 S.E.2d 603, 607 (1990). This Court strives to give "the language of the statute its natural and ordinary meaning unless the context requires otherwise." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (citation and quotation marks omitted). "Where the statutory language is clear and unambiguous, the Court

does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language." *Id.* (citation and quotation marks omitted). When engaging in judicial construction, this Court ascertains legislative intent by considering "the purpose of the statute and the evils it was designed to remedy, the effect of proposed interpretations of the statute, and the traditionally accepted rules of statutory construction." *Tew*, 326 N.C. at 738–39, 392 S.E.2d at 607.[2]

> All parts of the same statute dealing with the same subject are to be construed together as a whole, and every part thereof must be given effect if this can be done by any fair and reasonable interpretation. *Duke Power Co. v. Clayton, Comr. of Revenue*, 274 N.C. 505, 164 S.E.2d 289 (1968). A construction of a statute which operates to defeat or impair its purpose must be avoided if that can reasonably be done without violence to the legislative language. *State v. Hart*, 287 N.C. 76, 213 S.E.2d 291 (1975). Individual expressions must be construed as a part of the composite whole and be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit. *In re Hardy*, 294 N.C. 90, 240 S.E.2d 367 (1978).

*Id.*

¶ 17 We agree with the ALJ's assessment that there is little ambiguity in section 131E-184(h) on its face. "Acquire" and "reopen" are each terms with ordinary usages, and each appear to be used in their ordinary way. Neither "acquire" nor "reopen" is

---

[2] "These rules apply to both criminal and civil statutes." *Tew*, 326 N.C. at 739, 392 S.E.2d at 607.

defined within section 131E-184. Section 131E-176, the definitions statute for chapter 131E, also does not define the terms "acquire" and "reopen." *See* N.C. Gen. Stat. § 131E-176 (2019). "Acquire" is ordinarily defined as "to get as one's own." *Acquire*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/acquire (last visited Aug. 18, 2021). "Reopen" naturally means "to open again." *Reopen*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/reopen (last visited Aug. 18, 2021). Any ambiguity in these terms arises from the particular legal effect of the words when used together in the statute, and in the phrase "acquire *or* reopen." Notably, this phrase signals an implicit contrast between the two terms.

¶ 18        The ALJ's decision focuses, in large part, on the implicit contrast that the word "or" creates between "acquire" and "reopen." Under the ALJ's view, making the acquisition of a facility a condition precedent to an entity's ability to reopen that facility (as the Agency interpreted the statute) would change the plain meaning of the statutory language from "acquire *or* reopen" to "acquire *and* reopen." The Final Decision states, *inter alia*:

> Clearly, the language [of N.C. Gen. Stat. § 131E-184(h)] is a directive to the Agency that it "must exempt from [CON] review" without qualification. The question then becomes what is exempt. The answer is the "acquisition or reopening" of a [LMCF]. The statute specifically applies to the acquisition or reopening of a "facility." It specifically does not speak to the acquisition of anything else in

> particular, including the actual [CON].
>
> . . . .
>
> According to [the Agency and Sentara], regarding a [LMCF], a person cannot "reopen" a facility that they do not own. They contend that the exemption "affords providers a finite time period in which to either exercise their right to reopen a [LMCF], or to transfer the facility to someone else who will operate it as permitted by the CON law."
>
> This interpretation changes the plain meaning of the statute from "acquire **or** reopen" to "acquire **and** reopen." . . . .
>
> To rule with [the Agency and Sentara], one must conclude that the [LMCF] exemption was enacted to protect the financial interests of the entity that has failed and given up the provision of health care services to that service area. To put control of health care services in the hands of a failed business and for that entity to be able to hold up the provision of those services for two years, rather than the healthcare needs of North Carolinians in rural communities, is an absurdity.

¶ 19    We disagree with this interpretation. The statute specifically does "speak to the acquisition of . . . the actual [CON]." The language of section 131E-184(h) illustrates an instance where an entity may acquire a CON without undergoing the usual CON review process: when that entity intends to acquire or reopen a LMCF. Under this specific statute, the acquisition of a CON is tied to the entity's possession of a previously established and constructed health services facility. Under the initial CON review process, an applicant-entity whose application is approved is given a

reasonable time to construct its facility following that approval and may not begin constructing a facility before CON approval. *See* N.C. Gen. Stat. §§ 131E-189, 131E-190(b).

¶ 20      The act of using an awarded CON and engaging in the provision of medical services is acknowledged by section 131E-184(h) in the word "operate." N.C. Gen. Stat. § 131E-184(h) ("The person seeking to *operate* a [LMCF] shall give the [Agency] written notice of . . . [i]ts intention to acquire or reopen a [LMCF][.]" (emphasis added)). In its flawed interpretation, the ALJ assigns the pragmatic role of "operating" the facility to the word "reopen." The Agency's interpretation does not alter the plain meaning of the statute from "acquire *or* reopen" to "acquire *and* reopen." Rather, this interpretation reveals the statute's contemplation of two distinct avenues to operating a LMCF: "acquire and operate" *or* "reopen and operate." Which avenue is available to an entity stems from the entity's legal right to the facility at the time the Agency initially issued the CON. If we accept the ALJ's interpretation, it would require us to read "acquire" to mean "obtain and not use" and read "reopen" to mean "open again and operate;" there would then be no need for the legislature to have included the word "operate" earlier in the statute. *See N.C. Dep't of Correction v. N. C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) ("Because the actual words of the legislature are the clearest manifestation of its intent, we give every word of the statute effect, presuming that the legislature

carefully chose each word used.").  The ALJ's view contemplates a world where an entity may evoke section 131E-184 to simply acquire the facility without an intent to actually operate it.  Such a world is a legal nullity because the entity's intent to operate the LMCF is a previously addressed, material component of section 131E-184(h).[3]

¶ 21  When reading the sections of chapter 131E outlining the general CON review process *in pari materiae*, it becomes clear that the intent of section 131E-184 as a whole is to alleviate the need to undergo a minimally 125-day, investigatory review period before an entity may operate a healthcare facility in specifically enumerated circumstances.  The LMCF exemption in section 131E-184(h) acknowledges that, where an entity and its licensed facility have previously passed scrutiny and intend to once again offer those services in the same manner and form, there is less risk that the new services will not pass scrutiny when services are resumed.  Written notice under section 131E-184(h) does not trigger the same regiment of comments, hearings, and extensive review that is necessitated under section 131E-185.

---

[3] The ALJ's Final Decision alludes to three other instances where N.C. Gen. Stat. § 131E-184(h) has been used by an applicant-entity but does not provide citations to these instances.  The ALJ contends that, in two of these cases, the entity invoking section 131E-184(h) actually acquired, in the ordinary meaning of the term, the subject LMCF and then never operated it.  We note that the fact that an entity may have acquired and never operated an LMCF under the statute does not eliminate the materiality of that entity's expressed intent to operate the LMCF in order to first qualify for exemption from CON review—it means only that the entity did not follow through with the intent expressed in its notice to the Agency.

¶ 22        If the entity who wishes to operate the facility is the same entity who owns or has acquired the facility, that entity would be bound to adhere to "the representations made in the application and any applicable conditions the [Agency] placed on the [CON]." N.C. Gen. Stat. § 131E-189(c). Likewise, there would be a single, easily identifiable entity with a legal claim to the facility. The ALJ's interpretation leaves open a significant question to be answered in a subsequent case: If an entity does not need to first own a LMCF before it is given a CON to operate that LMCF, and multiple entities all notify the Agency of their intent to operate that LMCF, which entity is awarded the CON? Developing an answer to this hypothetical question in the present case would be advisory, but consideration of the hypothetical reveals a pivotal concern in the ALJ's interpretation. If multiple entities all expressed an intent to operate the LMCF, the Agency would need to undergo some additional review process to determine which entity is awarded the CON for the LMCF. The need for additional, perhaps attenuated review defeats the legislative intent of section 131E-184—to avoid a bidding war when the circumstances have a unique set of situational characteristics.

¶ 23        The ALJ refers to the Agency's decision as effecting an "absurdity," asserting that an adoption of the Agency's interpretation would necessitate holding that the legislative intent of section 131E-184(h) was to protect the financial interests of a failed business entity. We disagree. Rather, it would be an "absurdity" to force a new

entity to give a failed business an economic windfall by buying their assets, but it would be equally absurd to allow a new entity to step into the shoes of another entity, take on the economic benefits of operating a health service facility, and obtain a CON without paying for the privilege to avoid the associated burdens first.

¶ 24    Finally, we note that the language of section 131E-184(h) allows an entity to physically relocate the LMCF that it intends to "acquire or reopen." We do not find section 131E-184(h)'s acknowledgement that the LMCF may "become operational in a new location within the same county and the same service area as the facility that ceased continuous operations" to conflict with our holding in this case. *See* N.C. Gen. Stat. § 131E-184(h). After acquiring the subject LMCF, including the facility itself and the associated assets which were amassed under the scrutiny of CON review, the operating entity may exercise its ownership rights and move its property to a new location.

¶ 25    We hold that N.C. Gen. Stat. 131E-184(h) requires an entity which wishes to operate a LMCF to either already own and "reopen" that facility or to "acquire" legal ownership of the facility prior to operating it. When we construe all of chapter 131E together as a whole, the statutory language shows our General Assembly intended for the LMCF exemption to function as a shortcut around the normal CON process where the circumstances inherently guarantee a substantially similar level of healthcare services would be provided to the same geographical area. The only way

this can occur without additional, considerable review by the Agency is if the entity who wishes to operate a closed LMCF first steps into the shoes of the LMCF's prior operator and acquires the LMCF—a facility which previously endured scrutiny under the normal CON process and received clearance to operate.

## III.   Conclusion

We hold that the ALJ's final decision was reached upon an erroneous construction of the law.  We reverse the ALJ's decision and remand for entry of an order granting the Agency and Sentara's motion for summary judgment, denying FMSH's motion for summary judgment, and requiring FMSH to first acquire Sentara's interests in the Facility before obtaining a CON under section 131E-184(h) and operating the Facility.

REVERSED AND REMANDED.

Judges DILLON and JACKSON concur.